UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CATHERINE L. DEAN BURRIS FAMILY TRUST, William Burris, Trustee, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:15CV00354 AGF |
| NORTHWESTERN MUTUAL INSURANCE COMPANY and NORTHWESTERN MUTUAL FINANCIAL NETWORK, | ) ) ) ) ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

This diversity insurance case is before the Court on Plaintiff's motion to enforce a settlement agreement it claims to have reached with Defendant. Plaintiff, the Catherine L. Dean Burris Family Trust (the "Trust), was the named beneficiary of two insurance policies issued on the life of Catherine Dean ("decedent") by Defendant Northwestern Mutual Insurance Co. Burris, as trustee of the Trust, filed this action for vexatious refusal to pay benefits due under the policies. The parties do not dispute that a settlement amount was agreed upon. They do dispute, however, whether there was an agreement that Burris, as an individual, besides as trustee of the Trust, would execute a release of claims. For the reasons set forth below, Plaintiff's motion shall be denied.

## **BACKGROUND**

This action was initiated on February 10, 2014. The complaint notes that Burris is the surviving spouse of the decedent and that the action was brought on behalf of the

Trust and all beneficiaries thereof. Defendant states (Doc. No. 31 at 1), and Plaintiff does not dispute, that besides being trustee of the Trust, Burris was a beneficiary thereof.

The essential objective facts of the parties' settlement negotiations are not in dispute. On August 13, 2015, the parties held a mediation conference with the assistance of a mediator. Burris, counsel for Plaintiff, and counsel for Defendant were at the conference, and an assistant general counsel for Defendant, David Perez, participated during part of the conference via conference call. Defendant came to the conference with a typed four-page single-spaced "Release and Settlement Agreement" that Defendant had prepared. The first sentence provided as follows:

> This is a Release and Settlement Agreement (hereinafter "Agreement") entered into between THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY (hereinafter "Northwestern") and WILLIAM BURRIS, both on his own behalf and as trustee on behalf of THE CATHERINE L. DEAN BURRIS FAMILY TRUST (hereinafter "Burris"), (Northwestern and Burris are hereinafter referred to collectively as "the Parties.")

(Doc. No. 33.) The Release and Settlement Agreement made several other references, including in the signature block, to "Burris" and to his releasing Defendant on behalf of himself, in addition to on behalf of the Trust. The amount of money Defendant would pay in consideration of the promises in the agreement was left blank.

Toward the end of the mediation conference, the parties, positioned in separate rooms, reached agreement on the amount that would resolve the case. Defendant filled in that sum in the typed Release and Settlement Agreement it had previously prepared and asked the mediator to convey the document to Burris. The mediator did so, and a few minutes later returned to Defendant and advised Defendant that Burris would not sign the

document because he had to leave and did not have sufficient time to review it.

Defendant prepared a single-page handwritten document that stated as follows, in full:

> Burris Family Trust v. Northwestern Mutual
> Settlement Terms - 8/13/15
>
> Northwestern Mutual agrees to pay [the agreed-upon sum] for a full and complete release.
>
> The plaintiff shall provide satisfactory proof that William Burris is the duly constituted trustee of the plaintiff trust.
>
> The agreement shall contain a confidentiality provision.
>
> The plaintiff will dismiss the case with prejudice within 10 days of payment.
>
> The parties shall execute a formal settlement agreement.

(Doc. No. 29.)

Burris and counsel for both parties signed this document, with the understanding that Plaintiff would get its comments regarding the typed Release and Settlement Agreement to Defendant within approximately one week. The conference ended, with no one discussing or questioning what was meant by a "full and complete release." On August 14, 2015, the mediator filed an ADR compliance report stating that the parties achieved a settlement, and on August 17, 2015, the Court entered an Order directing the parties to file dismissal papers, dismissing the case, on or before September 18, 2015.

On September 11, 2015, Plaintiff sent Defendant a "red-lined" version of the typed Release and Settlement Agreement, with red lines through all references to Burris providing a release on behalf of himself, and generally substituting "The Trust" for "Burris." Plaintiff red-lined and added a few other terms with which Defendant took no

issue, but Defendant did refuse to proceed with the settlement if Burris would not sign a release on his own behalf. According to the affidavit of Defendant's counsel, he called Plaintiff's counsel on September 16, 2015, and advised him that the changes to the Release and Settlement Agreement which took out all references to Burris being bound individually "were a deal breaker" and that if Burris did not agree to sign the release individually, as well as as trustee, "there was no deal." (Doc. 31-1 at 7.) On September 18, 2015, Defendant sent Plaintiff a revised version of the Release and Settlement Agreement, that "accepted many of [Plaintiff's] changes, but rejected those which eliminated reference to Burris individually." *Id*. The parties reached an impasse on the matter, and Plaintiff filed the motion now under consideration.

Plaintiff represents that Doc. No. 29 at 8-12 (sealed) reflects the parties' formal agreement without the inclusion of a release from Burris in his individual capacity, and Plaintiff seeks to enforce this agreement, "or otherwise" to enforce "the settlement reached at the mediation and reflected in the handwritten settlement term sheet." Plaintiff argues that as Burris did not bring the action or participate in the mediation in his individual capacity, the "full and complete release" referenced in the handwritten settlement term sheet could only refer to a release by Plaintiff, that is, the Trust. According to Plaintiff, Defendant's efforts to secure a release from a non-party, that is, Burris in his individual capacity, is an "an overreach." (Doc. No. 34 at 1.)

Defendant argues that Plaintiff has given no real reason for Burris's refusal to sign a release in his individual capacity, whereas

> Defendant, by contrast, has good and substantive reasons for demanding that Mr. Burris sign in an individual capacity, as well as in this capacity as trustee. That is, Defendants do not know what claims the other side may think they have. Therefore, to insure the peace Defendants seek to gain by settlement, settlement agreements are almost universally much broader than the actual litigation. . . . The notion that Northwestern would pay a substantial sum to Mr. Burris, the trustee, only to have him take off his trustee hat and sue Northwestern again based on the same insurance policies defies credulity.

(Doc. No. 31 at 10.)

Defendant argues that "[e]ven the most casual perusal of the Release and Settlement Agreement [at the mediation conference] would have placed Mr. Burris and his counsel on notice that Northwestern intended Mr. Burris to be bound by the settlement in both his individual and trustee capacity," and thus "if that were a deal breaker, he should have said so" at the time. (Doc. No. 31 at 11.) According to Defendant, "[t]he real issue here is that each party claims to have had a different understanding of the scope of the negotiations and the meaning of a 'full and complete release,' and thus there was no meeting of the minds," and Plaintiff's motion to enforce the purported settlement agreement should be denied. *Id*. at 16.

In support of its position, Defendant submits Perez's affidavit in which he attests that he has settled many cases on Defendant's behalf and it is "standard procedure to get representatives of trusts to sign on their own behalf, as well as in their representative capacity; that had he known Burris would not sign the Release and Settlement Agreement in his individual capacity, he would have concluded the mediation without a settlement; and that it was his intention that there was to be a "full and complete release, which left no further potential claims under these policies." (Doc. No. at 31-2 at 2-3.)

Defendant also submits the affidavit of its counsel who took part in the mediation conference. He attests that had he been advised at the conference that Burris

> was refusing to sign the Release and Settlement Agreement in a personal capacity, as well as trustee, [he] would have called Mr. Perez to advise him of that situation and would have strongly recommended that Northwestern not settle without a full release relating to the two insurance policies at issue, which included Mr. Burris signing in a personal capacity.

(Doc. No. 31-1 at 4-5.)

Plaintiff maintains that an evidentiary hearing is not necessary. Defendant posits that an evidentiary hearing is not necessary to deny Plaintiff's motion, but suggests that the Court may wish to consider setting oral argument or a hearing and directing Burris appear in person to explain why he will not sign the release in his individual capacity.

## **DISCUSSION**

A federal diversity court applies the forum state's law of contract interpretation to determine whether a settlement agreement was formed. *State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apts., L.C*., 572 F.3d 511, 514 (8th Cir. 2009). Under Missouri law, "[a] settlement agreement is a species of contract and, therefore, a meeting of the minds is required. In determining whether a meeting of minds has occurred, the court looks at the objective manifestations of the parties." *Brooks v. Standard Fire Ins. Co*., No. 4:14-CV-182 CEJ, 2014 WL 7157357, at *1 (E.D. Mo. Dec. 15, 2014) (citing Missouri cases). In order for a settlement agreement to be enforceable, the parties must have reached agreement "on the essential terms of the deal." *Matthes v. Wynkoop*, 436 S.W.3d 100, 107 (Mo. Ct. App. 2014). The party requesting enforcement of a settlement agreement has the burden of proving the existence of the agreement by "clear, convincing, and

satisfactory evidence." *Id*.; *see also Kenner v. City of Richmond Heights, Mo*., 356 F. Supp. 2d 1002, 1008 (E.D. Mo. 2005).

Here, the Court agrees with Defendant that there was no meeting of the minds on the scope of the release to be given in exchange for the settlement amount. Defendant's asking the mediator to convey the typed Release and Settlement Agreement to Plaintiff for Burris's signature as trustee and on his own behalf, after the settlement amount had been agreed upon, is an objective manifestation that Defendant expected that in exchange for that amount, Burris would release claims as trustee and on his own behalf. In light of the course of negotiations in this case, the Court cannot conclude that the handwritten settlement term sheet, which called for "a full and complete release" is a manifestation that Defendant adopted another understanding of the terms of the agreement.[1]

Nor can the Court conclude that the scope of the release was not a material term of the parties' agreement, given that both sides maintain that it is a deal breaker. The Court is influenced in this conclusion by the parties' conduct from and after August 13, 2015, the date Plaintiff claims a binding settlement was reached. The emails and versions of the Release and Settlement that were exchanged indicate that there never was a meeting of the minds on the scope of the release to be given to Defendant, and that this was a material term for both sides. In sum, the Court concludes that Plaintiff has not met its burden of establishing the existence of an enforceable agreement as of August 13, 2015,

---

[1]  Though not essential to the determination, the Court also notes that Plaintiff did not raise any concerns with the typed Release and Settlement Agreement within a week, as he had agreed to do, but rather first raised his objection almost one month later, just one week before the Court's deadline for dismissal.

by clear, convincing, and satisfactory evidence. *See Bryant v. Bryan Cave, LLP*, 400 S.W.3d 325, 342 (Mo. Ct. App. 2013) ("What [contractual terms are] essential depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought."); *Grant v. Sears*, 379 S.W.3d 905, 919 (Mo. Ct. App. 2012) (reversing trial court's grant of a motion to enforce a settlement agreement, where conduct of the parties after the date of claimed settlement suggested no meeting of the minds on terms of the agreement).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to enforce a settlement agreement is **DENIED**. (Doc. No. 25.)

**IT IS FURTHER ORDERED** that the parties' joint second motion to revise the Case Management Order (Doc. No. 37) is **GRANTED** as follows:

a) The parties shall complete all discovery on or before May 31, 2016.

b) Case dispositive motions shall be filed on or before June 30, 2016, with any responses filed 28 days thereafter, and any reply filed within 14 days of any opposition.

c) The case is rescheduled for a jury trial on **November 14**, **2016, at 9:00 a.m.**

Except as amended herein, the Case Management Order previously entered will remain unchanged.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March, 2016.